**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| Phil Silos,<br><br>                             Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Co.,<br><br>                             Defendant. | Case No. _____<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## INTRODUCTION

1.      Union Pacific Railroad Co. has engaged in a pattern and practice of discriminating against employees who suffer from disabilities, in violation of the Americans with Disabilities Acts, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"). *See*, *e.g.*, *Harris v. Union Pacific Railroad Co.*, No. 8:16-cv-381, Memorandum and Order, Dkt. 307 (D. Neb. Feb. 4, 2019). This includes against Phil Silos, who Union Pacific has effectively terminated because he walks with a limp. Union Pacific's termination of Silos is morally gross and patently illegal.

## PARTIES

2.      Silos is an individual who resides and worked for Union Pacific in this district.

3.      Union Pacific is a railroad carrier engaged in interstate commerce, including in this district, where it is also headquartered.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

1

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Union Pacific is headquartered in this district and because a substantial part of the events or omissions giving rise to Silos's claims occurred in this district.

## FACTUAL ALLEGATIONS

6.      Silos worked for Union Pacific from 1998 to the incident at issue in this case.

7.      At the time of the incident at issue in this case, Silos was a machine operator.

8.      Silos has the certifications and seniority, however, to hold any of the maintenance of way positions, including foreman, laborer, and track inspector.

9.      Silos suffers from arthritis.

10.     Silos's arthritis causes him not only pain but also to walk with a limp.

11.     Neither Silos's arthritis nor its effects prevent Silos from safely performing any of the essential functions of any of the maintenance of way positions.

12.     In January of 2020, a new supervisor approached Silos at the start of Silos's shift and commented on Silos's limp.

13.     Silos explained to the supervisor that his limp was caused by arthritis and that neither his arthritis nor limp prevented him from safely doing his job.

14.     At the end of Silos's shift, the supervisor called Silos into his office and told Silos that he was removing Silos from service because he believed Silos's limp caused Silos to be a safety risk.

15.     When Silos objected, the supervisor justified his decision by claiming that he had observed Silos having difficulty climbing into the machine Silos had operated that day.

16. Neither had Silos had difficulty climbing into his machine nor had the supervisor even witnessed Silos ever climbing into a machine.

17. Furthermore, the supervisor lacked the education and/or experience necessary to determine whether an employee's limp prevented the employee from safely doing the employee's job.

18. After he was sent home, Silos contacted Union Pacific's health and medical department, which told him that he was prohibited from returning to work until he was evaluated and cleared for duty by his primary-care physician.

19. Union Pacific required Silos to pay for said evaluation.

20. Nevertheless, Silos did as he had been instructed.

21. After evaluating Silos, Silos's primary-care physician determined that Silos would eventually need to undergo hip-replacement surgery but that Silos was nevertheless fit for duty until that point.

22. This was insufficient for Union Pacific, which then required Silos to be seen by an orthopedist.

23. Again, Union Pacific required Silos to pay for the evaluation.

24. Nevertheless, Silos again did as he had been instructed.

25. After examining him, the orthopedist also cleared Silos to return to duty without restrictions.

26. Union Pacific did not return Silos to duty.

27. Instead, Union Pacific kept Silos in limbo, telling him neither whether it would return him to service nor what else he could do to facilitate its return-to-work decision.

28.    After way too long, Union Pacific finally told Silos what he could do to facilitate its decision, namely see his primary-care physician . . . again.

29.    Since nothing had changed since the last time he had seen his primary-care physician, it is not at all clear why Union Pacific wanted Silos to again see his primary-care physician.

30.    Silos told Union Pacific that he would again submit to an examination by his primary-care physician but that he could not afford to pay for the examination since he had been out of work for so long.

31.    Union Pacific agreed to pay for the examination, and Silos again submitted to it.

32.    Silos's primary-care physician again cleared Silos to return to work without restrictions.

33.    Again, the primary-care physician's opinion was insufficient for Union Pacific, which again required Silos to be seen by an orthopedist.

34.    Although nothing had changed since the last time he saw the orthopedist, Silos again did as he had been instructed and submitted to an examination.

35.    The orthopedist again found that Silos should be returned to work.

36.    Yet, Union Pacific did not return Silos to work.

37.    Instead, Union Pacific told Silos that, despite all medical evidence to the contrary, it believed his arthritis necessitated certain restrictions being issued against him and that said restrictions could not be accommodated.

38.    Union Pacific did nothing to determine whether the restrictions could be accommodated.

39.    Not only were none of the restrictions necessary but also Union Pacific could have easily accommodated any restrictions that were necessary.

40.    Now, instead of looking forward to the retirement for which he has long worked, Silos is struggling to make ends meet.

41.    Left with no other choice, Silos filed a charge with the EEOC.

42.    The EEOC found probable cause to find that Union Pacific has violated the ADA.

43.    Still, Union Pacific has refused to reinstate Silos.

**CAUSES OF ACTION**

**DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADA**

44.    Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of "disability" in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

45.    Discriminating against a qualified individual with a disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

46.    Discriminating against a qualified individual with a disability also includes asking the individual for his or her medical information and/or to submit to a medical examination without an objectively reasonable belief that the medical condition for which the information is being requested and/or for which the individual is to be examined

prevents him or her from safely doing his or her job. 42 U.S.C. § 12112(d)(4)

47.     Discriminating against a qualified individual with a disability also includes, when requesting the individual's medical information and/or ordering the individual to submit to a medical examination, not paying for the cost of obtaining the information and/or the examination.

48.     At all relevant times, Silos was an individual with a "disability" under each of the ADA's three definitions of the term.

49.     Silos is a qualified individual under the ADA.

50.     Union Pacific discriminated against Silos on the basis of disability when it removed him from service without pay because of his arthritis and/or limp, each time thereafter it requested his medical information and/or for him to submit to a medical examination, when it failed to pay for the examination it required him to undergo, and the entirety of the time it has refused to allow him to return to work.

51.     If Union Pacific believed that Silos's disability prevented him from performing any essential function of his job, it also discriminated against him on the basis of disability when it failed to explore whether a reasonable accommodation existed that would allow Silos to perform the essential functions of his job.

52.     Because Union Pacific violated 42 U.S.C. § 12112, Silos has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Silos is also entitled to attorneys' fees and costs incurred in connection with these claims.

53.     Union Pacific committed the above-alleged acts with reckless or deliberate disregard for Silos's rights. As a result, Silos is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Silos prays for judgment against Union Pacific as follows:

42      That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

43      For an injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

44      For an award of damages arising from loss of past and future income and benefits, and emotional distress, in an amount to be determined by the trier of fact;

45      For the maximum amount of compensatory damages allowed by statute;

46      For the maximum amount of punitive damages allowed by statute;

47      For an award of pre-judgment interest, as provided by law;

48      For a tax offset;

49      For an award of Silos's costs, disbursements and attorneys' fees pursuant to law;

50      For all relief available under the ADA;

51      For such other and further relief available by statute; and

52      For such other and further relief as the Court deems just and equitable.

**PLAINTIFF'S COUNSEL**

Dated: March 27, 2023

/s/ *Nicholas D. Thompson*
Nicholas D. Thompson (MN389609)
Casey Jones Law
3520 Cherryvale Avenue, Suite 83
Appleton, WI 54913

7

Phone: (757) 477-0991
Email: nthompson@caseyjones.law